## IN RE: GRAND JURY SUBPOENA

**United States of America,
Plaintiff–Appellee,**

v.

**Under Seal, Defendant,**

and

**Under Seal, Intervenor–Appellant.**

**No. 03–1269.**

United States Court of Appeals,
Fourth Circuit.

Argued: June 6, 2003.
Decided: Aug. 19, 2003.

**ARGUED:** Andrea Dennis Callaman, Assistant Federal Public Defender, Greenbelt, Maryland, for Appellant. David Ira Salem, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Paula Xinis, Assistant Federal Public Defender, Greenbelt, Maryland, for Appellant. Thomas M. DiBiagio, United States Attorney, Greenbelt, Maryland, for Appellee.

Before WILKINS, Chief Judge, and WILLIAMS and TRAXLER, Circuit Judges.

Affirmed by published opinion. Chief Judge WILKINS wrote the opinion, in which Judge WILLIAMS and Judge TRAXLER joined.

## OPINION

WILKINS, Chief Judge:

Appellant, the subject of a pending grand jury investigation, appeals a district court order compelling his former attorney ("Counsel") to answer two questions before the grand jury.[1] Finding no error, we affirm.

### I.

In March 2002, Appellant was interviewed by two FBI agents for the purposes of (1) determining whether Appel-

---

1. Because this appeal relates to an ongoing grand jury investigation, we use generic terms to refer to the persons involved to avoid disclosing their identities.

lant, who is of Middle Eastern descent, had any information that might be helpful in connection with terrorism investigations; and (2) discussing with Appellant his earlier filing of an INS document known as Form I–485, sometimes referred to as a "green card" application. This noncustodial interview was conducted in the lobby of Appellant's apartment building and lasted approximately 45 minutes.

During the interview, one of the FBI agents asked Appellant about an answer he had provided to the following question on Form I–485 ("Question 1(b)"): "Have you ever, in or outside the United States ... been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations[?]" J.A. 9 (internal quotation marks omitted). Appellant had answered that question "no." *Id.* (internal quotation marks omitted). Before the interview, the FBI had learned that Appellant had a prior conviction for shoplifting. The FBI agent confronted Appellant with a printout reflecting that conviction and asked why he had answered "no" to Question 1(b). Appellant responded, "I answered 'no' to the question ... under the advice of an attorney." *Id.* at 15 (internal quotation marks omitted). Appellant subsequently identified Counsel by name, and he also gave the name of a second attorney.

In February 2003, in response to a Government subpoena, Counsel appeared before a federal grand jury that was investigating Appellant for making a false statement on Form I–485. After answering some preliminary questions establishing that she was Appellant's former attorney, Counsel was asked two questions that are relevant to this appeal: (1) "[D]id [Appellant] ... consult with you on questions involving the filling out of the I–

485?"; and (2)"[D]id you advise him to answer 'no' to [Question 1(b)]?" *Id.* at 7–8 (internal quotation marks omitted). Counsel declined to answer these questions, asserting that her answers would reveal privileged information.

The grand jury proceedings were suspended, and the Government moved to compel Counsel to answer the two questions. Appellant intervened and moved to quash the subpoena, arguing that the questions sought to reveal privileged communications. After conducting a hearing, the district court granted the Government's motion to compel. The court determined that the attorney-client privilege would generally protect the advice that Counsel gave to Appellant. However, the court concluded that Appellant's statements to the FBI agents constituted an implicit waiver of the privilege with respect to the questions at issue. The district court also found that Appellant was not deceived into revealing information to the FBI, emphasizing that the FBI agents were entitled to ask questions of Appellant, who was not in custody. Accordingly, the district court ordered Counsel to answer the questions posed by the Government.

## II.

■ Appellant challenges the ruling of the district court that he waived his attorney-client privilege with respect to the information sought by the Government.[2] We review factual findings underlying an attorney-client privilege ruling for clear error, and we review the application of legal principles de novo. *See Better Gov't Bureau, Inc. v. McGraw (In re Allen),* 106 F.3d 582, 601 (4th Cir.1997).

---

**2.** There is no question regarding our jurisdiction over this appeal. *See United States v.*

*(Under Seal),* 748 F.2d 871, 873 n. 2 (4th Cir.1984).

When the attorney-client privilege applies, "it affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998). However, because this privilege "impedes the full and free discovery of the truth," it must be "narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (internal quotation marks, citations & alterations omitted).

This court has adopted the "classic test" for determining the existence of an attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982) (per curiam) (internal quotation marks omitted). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the

privilege was not waived." *Id.* (citations omitted).

## A.

We first consider whether the two questions posed by the Government seek information that is generally protected by the attorney-client privilege. The Government contends that the first question— whether Appellant "consult[ed] with [Counsel] on questions involving the filling out of the I–485," J.A. 7 (internal quotation marks omitted)—was not intended to disclose the substance of Counsel's communications with Appellant but rather to establish the "general purpose of the work performed." Appellee's Br. at 7 (internal quotation marks omitted); *see United States v. Under Seal (In re Grand Jury Subpoena),* 204 F.3d 516, 520 (4th Cir. 2000) (stating that "the general purpose of the work performed [is] usually not protected from disclosure by the attorney-client privilege because such information ordinarily reveals no confidential professional communications between attorney and client" (internal quotation marks & citation omitted)). This question, however, seeks more than just the "general purpose" of the work performed (for example, providing advice regarding an immigration matter); it specifically asks whether Appellant consulted with Counsel about the preparation of the Form I–485. Thus, the question impermissibly seeks disclosure of the specific nature of the legal advice sought by Appellant. *Cf. Chaudhry v. Gallerizzo,* 174 F.3d 394, 402–03 (4th Cir. 1999) (holding legal bills that revealed specific nature of research conducted protected by attorney-client privilege).

The Government also contends that its second question—whether Counsel "advise[d] [Appellant] to answer 'no' to [Question 1(b)]," J.A. 8 (internal quotation marks omitted)—does not seek informa-

tion protected by the attorney-client privilege. The Government argues that because Appellant answered "no" to Question 1(b) in a publicly filed document, he cannot claim an attorney-client privilege in connection with that answer because he did not intend for it to remain confidential. The district court declined to address this specific argument, instead focusing on Appellant's waiver of the privilege. Nonetheless, the district court stated that "there is no question ... that there was an attorney-client privilege here" and that "the advice would be within the scope of that privilege." *Id.* at 52.

We agree with the district court that the attorney-client privilege would generally protect against disclosure of whether Counsel advised Appellant to answer "no" to Question 1(b). The Government's question asked Counsel to reveal the substance of legal advice that she may have given to Appellant concerning his submission of Form I–485—a confidential communication that clearly falls within the scope of the privilege. *See United States v. Under Seal (In re Grand Jury Proceedings)*, 102 F.3d 748, 750 (4th Cir.1996) ("No doubt exists that, under normal circumstances, an attorney's advice provided to a client, and the communications between attorney and client are protected by the attorney-client privilege.").

Further, we reject the Government's "public document" argument because it misconstrues the nature of the asserted privilege. The underlying *communications* between Counsel and Appellant regarding his submission of Form I–485 are privileged, regardless of the fact that those communications may have assisted him in answering questions in a public document. Adopting the Government's reasoning would lead to the untenable result that any attorney-client communications relating to the preparation of publicly filed legal documents—such as court pleadings—would be unprotected.

And, this is not a situation where Appellant intended his communications with Counsel to be published. *See United States v. (Under Seal)*, 748 F.2d 871, 875–76 (4th Cir.1984) ("Only when the attorney has been authorized to perform services that demonstrate the client's intent to have his communications published will the client lose the right to assert the privilege as to the subject matter of those communications."); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1358 (4th Cir.1984) (holding that information clients provided to attorney for preparation of investment prospectus was not privileged because there was no "intent that the information was to be kept confidential"). Indeed, Appellant filled out and submitted the Form I–485 himself; that he may have answered a question in a particular way on the advice of his attorney does not subject the underlying attorney-client communications to disclosure.

### B.

■■■ Although the information sought by the Government falls within the scope of the attorney-client privilege, we agree with the district court that Appellant waived that privilege through his statements to the FBI agents. "The client is the holder of the attorney-client privilege and can waive it either expressly, or through conduct." *Hawkins*, 148 F.3d at 384 n. 4 (citation omitted). "As a general rule, implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege. Such a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege." *Id.* (citations omitted).

As explained above, when the FBI agent confronted Appellant with his shoplifting conviction and asked why he had answered "no" to Question 1(b), Appellant replied, "I answered 'no' to the question ... under the advice of an attorney." J.A. 15 (internal quotation marks omitted). And, Appellant identified Counsel by name, also giving the name of a second attorney.

Appellant argues that these statements did not constitute a waiver of the attorney-client privilege because they merely revealed his *conduct*—i.e., that he had acted in a particular way relying on the legal advice of an attorney—rather than disclosing the substance of that advice. This distinction fails, however, because Appellant clearly stated to a third party that his attorney had advised him to answer "no" to Question 1(b). This same information is the subject of the second (and ultimate) question posed to Counsel by the Government: whether she advised Appellant to answer "no" to Question 1(b).

Appellant also claims that he did not waive his attorney-client privilege because he identified two different attorneys during the FBI interview without specifying which one had advised him regarding his answer to Question 1(b). However, the FBI agent testified that although Appellant did not initially recall the name of the attorney who had provided the advice, shortly thereafter he said, "I remember now. The attorney was [Counsel]." *Id.* at 40 (internal quotation marks omitted). After a pause, Appellant then said, "And there's another attorney, [Second Counsel]." *Id.* (internal quotation marks omitted). This testimony sufficiently established Appellant's identification of Counsel

as one of the attorneys—if not the primary attorney—who advised him regarding Question 1(b).

 Finally, Appellant claims that any waiver should be deemed ineffective because the FBI agents coerced and deceived him into disclosing privileged information. This argument is meritless. Appellant was not in custody, and the interview, which lasted less than an hour, was conducted in the lobby of his apartment building. Nor does the record reflect any other indicia of coercion. Appellant suggests that the agents initially misled him into believing that the interview related to terrorism investigations, not his submission of an immigration form. But the fact that during the course of the interview the agents asked Appellant about a different subject—which was also related to law enforcement—does not establish that they deceived him into revealing privileged information concerning that subject.[3]

### III.

For the foregoing reasons, we affirm the order of the district court granting the Government's motion to compel.

*AFFIRMED*

---

**3.** Appellant's argument that the agents did not warn him about the consequences of disclosing attorney-client communications also fails because even if such a duty existed, it would not apply here. Appellant volunteered the privileged information in response to a general question by the FBI agent, without any prior indication that Appellant had sought the advice of an attorney.