**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1241**

In re:  FLUOR INTERCONTINENTAL, INC., a California corporation; FLUOR
FEDERAL GLOBAL PROJECTS, INC.; FLUOR FEDERAL SERVICES, LLC,

Petitioners.

On Petition for Writ of Mandamus.  (1:19-cv-00289-LO-TCB)

Submitted:  March 2, 2020                         Decided:  March 25, 2020

Before DIAZ, THACKER, and RUSHING, Circuit Judges.

Petition granted by unpublished per curiam opinion.

Mark C. Moore, Jennifer S. Cluverius, NEXSEN PRUET, LLC, Greenville, South
Carolina; John P. Elwood, Craig D. Margolis, Tirzah S. Lollar, Christian D. Sheehan,
Samuel M. Shapiro, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C.,
for Petitioners.  Eric N. Heyer, Thomas O. Mason, THOMPSON HINE LLP, Washington,
D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On March 13, 2020, we granted a petition by Fluor Intercontinental, Inc., Fluor Federal Global Projects, Inc., and Fluor Federal Services, LLC (collectively "Fluor") for a writ of mandamus. We directed the district court to vacate portions of three orders that required Fluor to produce information over which the district court concluded Fluor had waived attorney-client privilege. We set out our reasons here.

I.

In 2017, Fluor, a government contractor, began an internal investigation of an alleged conflict of interest involving an employee, Steven Anderson, and a company (Relyant Global, LLC) to which Fluor planned to award a contract. Fluor's legal department supervised the investigation, providing advice about Fluor's potential legal exposure and the need to report any wrongdoing to the government. Following its investigation, Fluor terminated Anderson. It also sent a summary of its findings to the government pursuant to 48 C.F.R. § 52.203-13(b)(3)(i), which provides that "[t]he Contractor shall timely disclose, in writing, to the agency Office of the Inspector General . . . whenever . . . the Contractor has credible evidence" that an employee has violated certain federal criminal laws, including the False Claims Act.[1]

_____

[1] In addition to the disclosure requirement, this regulatory regime, called the "Contractor Code of Business Ethics and Conduct," requires government contractors to have a written code of business ethics and conduct, exercise due diligence to prevent and detect criminal conduct, and establish an ongoing business ethics awareness and compliance program as well as an internal control system. *Id.* § 52.203-13(b)–(c). The

2

The summary of Fluor's findings includes the following statements: (1) "Anderson had a financial interest in and appears to have inappropriately assisted [a] Fluor supplier and potential subcontractor"; (2) "Fluor considers this a violation of its conflict of interest policy and Code of Business Conduct and Ethics"; (3) "Anderson used his position as the [Afghanistan] project manager to pursue Relyant concrete contracts with the German military, and Mr. Anderson used his position as the [Afghanistan] project manager to obtain and improperly disclose nonpublic information to Relyant"; and (4) "Fluor estimates there may have been a financial impact to the Government because Mr. Anderson's labor was charged to the contract task order while he engaged in improper conduct." Pet. Writ of Mandamus 13.

Anderson filed suit against Fluor, asserting claims of, among other things, wrongful termination, defamation, and negligence stemming from Fluor's internal investigation and disclosure to the government. In discovery, Anderson sought copies of Fluor's files regarding the internal investigation. Fluor objected, arguing that the files were protected by attorney-client privilege and the work-product doctrine. Anderson moved to compel production, but a magistrate judge denied the motion, agreeing with Fluor that the files were protected from disclosure.

---

internal control system must provide for, among other things, "[f]ull cooperation with any Government agencies responsible for audits, investigations, or corrective actions." *Id.* § 52.203-13(c)(2)(ii)(G). The disclosure requirement is meant to "emphasize the critical importance of integrity in contracting." Federal Acquisition Regulation; FAR Case 2007-006, Contractor Business Ethics Compliance Program and Disclosure Requirements, 73 Fed. Reg. 67064-02, 67071 (Nov. 12, 2008).

On November 8, 2019, the district court overruled (in part) the magistrate judge's order. As relevant here, the court concluded that the four statements described above in Fluor's disclosure to the government revealed "legal conclusions which characterize [Anderson's] conduct in a way that reveals attorney-client communications," Pet. Writ of Mandamus Ex. D, at 10, and thus that Fluor had waived attorney-client privilege as to those statements, other communications on the same subject matter, and the details underlying them, including fact work product. The district court also concluded that Fluor's description of the disclosure as "voluntary" in its answer and counterclaim was a binding judicial admission. And it asserted that 48 C.F.R. § 52.203-13(b)(3)(i) requires only "a mere notice disclosing the fact that the contractor has credible evidence," so Fluor's disclosure of information beyond that fact was voluntary. Pet. Writ of Mandamus Ex. D, at 12 n.1. Fluor moved for reconsideration of the district court's ruling, but the court denied the motion on December 20, 2019.

The magistrate judge then ordered Fluor to produce the relevant internal investigation files. But based on Fluor's representation that it would promptly seek appellate review, the magistrate judge stayed the production order. On February 26, 2020, the district court overruled the magistrate judge's order staying production and ordered Fluor to produce the relevant materials within seven days.

Fluor then sought mandamus relief in our court.

4

II.

"Mandamus is a 'drastic' remedy that must be reserved for 'extraordinary situations[.]'" *Cumberland Cty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016) (quoting *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976)). We provide mandamus relief "only when (1) petitioner 'ha[s] no other adequate means to attain the relief [it] desires'; (2) petitioner has shown a 'clear and indisputable' right to the requested relief; and (3) the court deems the writ 'appropriate under the circumstances.'" *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004)). As we explain, we conclude that Fluor has satisfied these exacting standards.

A.

We consider first whether Fluor has other adequate means to attain the relief it seeks. Anderson argues that Fluor has available to it three such means—(1) disobey the district court's order, be found in contempt, and appeal the contempt order; (2) seek certification of an interlocutory appeal under 28 U.S.C. § 1292(b); and (3) appeal after final judgment.

But under the circumstances of this case, we cannot agree that these means are adequate. As to appealing from a contempt order, we have previously held that "such an appellate remedy is hardly 'adequate.'" *Rowley v. McMillan*, 502 F.2d 1326, 1335 (4th Cir. 1974); *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (noting that "forcing a party to go into contempt is not an 'adequate' means of relief"). As we have explained, a civil contempt sanction is not immediately appealable as an interlocutory order. *United States v. Myers*, 593 F.3d 338, 344 (4th Cir. 2010). And while

5

"a party to an action may immediately appeal an order of *criminal* contempt," Fluor couldn't have known in advance "whether the [d]istrict [c]ourt would punish its disobedience with an appealable criminal sanction or an 'onerously coercive civil contempt sanction with no means of review until the perhaps far distant day of final judgment.'" *See In re The City of New York*, 607 F.3d 923, 934 (2d Cir. 2010) (quoting 15B Charles Alan Wright, Arthur R. Miller & Edward C. Cooper, *Federal Practice and Procedure* § 3914.23, at 146 (2d ed. 1992)).

As to seeking certification of an interlocutory appeal under § 1292(b), we agree with Fluor that this means of relief is inadequate in light of the district court's suggestion that such an effort would be futile. When considering the magistrate judge's order staying production, the district court evaluated Fluor's likelihood of success on appeal. In doing so, it noted that, despite Fluor's "significant briefing and argument," Fluor "ha[d] not gone so far as to identify specific grounds which will satisfy the preconditions for [interlocutory appeal]." Pet. Writ of Mandamus Ex. K, at 8.

Nor are we satisfied that appealing after a final judgment is an adequate means of relief here. True, in *Mohawk Industries, Inc. v. Carpenter*, the Supreme Court concluded that post-judgment appeals are generally adequate means of relief from disclosure orders adverse to attorney-client privilege. 558 U.S. 100, 109 (2009). But it also noted that in "extraordinary circumstances," such as "when a disclosure order 'amount[s] to a judicial usurpation of power or a clear abuse of discretion,' or otherwise works a manifest injustice," a party may still "petition the court of appeals for a writ of mandamus." *Id.* at 111 (quoting *Cheney*, 542 U.S. at 390).

6

We conclude that such circumstances are present in this case. First, for the reasons discussed below, the district court's ruling that Fluor's disclosure waived attorney-client privilege is clearly and indisputably incorrect. Second, the ruling implicates "the important legal principles that protect attorney-client relationships," which we recently "elucidate[d]" in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 172–74 (4th Cir. 2019). Third, requiring Fluor to produce privileged materials is particularly injurious here, where Fluor acted pursuant to a regulatory scheme mandating disclosure of potential wrongdoing. Government contractors should not fear waiving attorney-client privilege in these circumstances. We think that together, these circumstances work a manifest injustice.

For these reasons, we conclude that Fluor has no other adequate means to attain the relief it desires.

### B.

We consider next whether Fluor has shown a clear and indisputable right to relief. Fluor contends that it has done so as to three erroneous conclusions by the district court: (1) that Fluor's disclosure revealed attorney-client communications and thus waived attorney-client privilege, (2) that Fluor's disclosure was voluntary under 48 C.F.R. § 52.203-13, and (3) that Fluor's description of the disclosure as "voluntary" in its answer and counterclaim was a binding judicial admission. We agree that the district court clearly and indisputably erred as to the first conclusion, and so find it unnecessary to address the others.

The district court overruled the magistrate judge's denial of Anderson's motion to compel production of the internal investigation files because it concluded that the four

7

statements described above in Fluor's disclosure to the government waived attorney-client privilege. It focused on the following portions of the statements: "(i) Plaintiff 'appears to have inappropriately assisted . . .'; (ii) 'Fluor considers [that] a violation . . .'; (iii) Plaintiff 'used his position . . . to pursue [improper opportunities] and . . . to obtain and improperly disclose nonpublic information . . .'; and (iv) 'Fluor estimates there may have been a financial impact . . . [due to] improper conduct.'" Pet. Writ of Mandamus Ex. D, at 9–10.

According to the district court, because these four statements are "conclusions which only a lawyer is qualified to make," *id.* at 10 (quoting *In re Allen*, 106 F.3d 582, 605 (4th Cir. 1997)), they revealed attorney-client communications and thereby waived attorney-client privilege. Respectfully, the district court's conclusion was clearly and indisputably incorrect.

To find waiver, a court must find that there has been "disclosure of a communication or information covered by the attorney-client privilege or work-product protection." Fed. R. Evid. 502. But we will not infer a waiver merely because a party's disclosure covers "the same topic" as that on which it had sought legal advice. *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018); *see also United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986) ("[A] client does not waive his attorney-client privilege 'merely by disclosing a subject which he had discussed with his attorney.' In order to waive the privilege, the client must disclose the communication with the attorney itself." (internal citation omitted)).

Relatedly, in determining whether there has been disclosure of a communication covered by the attorney-client privilege, we distinguish between disclosures based on the

8

advice of an attorney, on the one hand, and the underlying attorney-client communication itself, on the other. *See In re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003). In *In re Grand Jury Subpoena*, we considered whether the appellant waived attorney-client privilege by answering "no" to a question on a publicly filed document based on the advice of his attorney, and whether the appellant waived privilege by telling FBI agents that he answered "no" to the question "under the advice of an attorney." *Id.* at 334, 336.

We concluded that the appellant's statement—based on the advice of his attorney— on a publicly filed document did not waive privilege. *Id.* at 336. We explained that "[t]he underlying *communications* between Counsel and Appellant regarding his submission of [the publicly filed document] are privileged, regardless of the fact that those communications may have assisted him in answering questions in a public document." *Id.* Put differently, "Appellant filled out and submitted [the publicly filed document] himself; that he may have answered a question in a particular way on the advice of his attorney does not subject the underlying attorney-client communications to disclosure." *Id.* Ruling otherwise, we noted, "would lead to the untenable result that any attorney-client communications relating to the preparation of publicly filed legal documents—such as court pleadings—would be unprotected." *Id.*

But, as to the appellant's statements to the FBI agents, we concluded that he waived attorney-client privilege because he "clearly stated to a third party that his attorney had advised him to answer 'no'" to the relevant question, thereby disclosing the content of the underlying attorney-client communication itself. *Id.* at 337.

9

These principles reveal the clear and indisputable error in the district court's assertion that Fluor's disclosure contained "legal conclusions as to past events, as well as recommendations for future conduct, [] conclusions which only a lawyer is qualified to make." Pet. Writ of Mandamus Ex. D, at 10 (quoting *In re Allen*, 106 F.3d at 605). Setting aside whether Fluor's statements were in fact legal conclusions that only a lawyer could make, that is not the test for whether waiver of attorney-client privilege has occurred.[2] Instead, to find waiver, a court must conclude that there has been disclosure of *protected communications*.

As applied here, the fact that Fluor's disclosure covered the same topic as the internal investigation or that it was made pursuant to the advice of counsel doesn't mean that privileged communications themselves were disclosed. The district court clearly and indisputably erred in finding otherwise.

We also disagree with the district court's conclusion that this case is similar to *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988). On the contrary, that case highlights the problem with the district court's determination that Fluor disclosed privileged communications. There, we concluded that the appellant waived privilege over protected internal audit interviews because its disclosure to the government quoted from the interviews, and it waived privilege over protected internal notes and memoranda on the

---

[2] As Fluor correctly notes, *In re Allen* has nothing to do with waiver. There, we held simply that because documents prepared by a lawyer contained legal conclusions that only an attorney was qualified to make, the documents were prepared in the attorney's capacity as an attorney rather than as a lay investigator. 106 F.3d at 605.

interviews because the disclosure "summariz[ed] in substance and format the interview results." *Id.* at 626 n.2. For example, the disclosure stated that "'of those consulted within the Company all will testify that any qualms they had about the arrangement had nothing to do with worries about fraud,' and 'there is no evidence, testimonial or documentary, that any company officials in the meeting [of November 17, 1983] except Mr. Pollard and his Maxim employees, understood that Maxim had departed from the strict procedures of its [] contract.'" *Id.* at 623. By directly quoting and summarizing what employees had said to counsel in the interviews, the appellant in *In re Martin Marietta Corp.* revealed privileged communications.

But here, there is no evidence to suggest that the four statements in Fluor's disclosure quoted privileged communications or summarized them in substance and format. Rather, the statements do no more than describe Fluor's general conclusions about the propriety of Anderson's conduct. We are unwilling to infer a waiver of privilege on these facts. The most that can be inferred from this record is that Fluor's statements were based on the advice of its counsel. Because that is clearly and indisputably insufficient to show waiver, Fluor has shown a clear and indisputable right to relief.

## C.

Lastly, we are satisfied that a writ is appropriate under the circumstances. In addition to being manifestly incorrect, the district court's decision has potentially far-reaching consequences for companies subject to 48 C.F.R. § 52.201-13 and other similar disclosure requirements. We struggle to envision how any company could disclose credible evidence of unlawful activity without also disclosing its conclusion, often based

11

on the advice of its counsel, that such activity has occurred.  More likely, companies would err on the side of making vague or incomplete disclosures, a result patently at odds with the policy objectives of the regulatory disclosure regime at issue in this case.

The district court's decision also introduces uncertainty and irregularity into waiver determinations.  Whether a conclusion is one that only an attorney could make is a subjective determination that will likely depend on the particular legal question at issue. The Supreme Court has stated that "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981).  We agree, and therefore find it necessary to issue the writ here.

\*\*\*

For the reasons given, we grant Fluor's petition for a writ of mandamus on the terms set out in our March 13 order.

*PETITION GRANTED*