# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 9, 2021

Lyle W. Cayce
Clerk

No. 20-10443

Med-Cert Home Care, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Xavier Becerra, Secretary, U.S. Department of Health and Human Services; Seema Verma, Administrator for Centers for Medicare and Medicaid,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-2372

Before Dennis, Elrod, and Duncan, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Med-Cert Home Care, L.L.C. sued the federal officials in charge of administering the Medicare program for alleged violations of its procedural due process rights. Med-Cert claimed that when the Department of Health and Human Services (HHS) sought to recoup overpaid Medicare funds from Med-Cert *before* its hearing with an administrative law judge, HHS violated Med-Cert's due process rights. The district court agreed and enjoined the federal officials from recouping funds until after the hearing. While this case

was on appeal, we issued *Sahara Health Care Inc. v. Azar*, 975 F.3d 523 (5th Cir. 2020). There, we held that a similarly situated health-care provider was not denied due process. *Id.* at 530–33. We have since applied *Sahara* to reverse a district court's permanent injunction like the one in this case. *Family Rehab., Inc. v. Becerra*, 16 F.4th 1202 (5th Cir. 2021). Because *Sahara* controls here, we REVERSE and REMAND for the district court to consider Med-Cert's alternative claims.

## I.

The Medicare program allows HHS to recoup funds that it overpaid to a health-care provider. 42 U.S.C. § 1395ddd(f). If the provider believes it was not overpaid, it can challenge HHS's determination through a four-step administrative review process, followed by review in a federal court. *Id.* § 1395ff. Step one is a "redetermination" by an HHS contractor. *Id.* § 1395ff(a)(3); 42 C.F.R. § 405.948. Step two involves "reconsideration" by a qualified independent contractor. 42 U.S.C. § 1395ff(b)–(c); 42 C.F.R. §§ 405.902, 405.904(a)(2). These first two steps are the only time the provider can submit paper evidence, absent "good cause." 42 U.S.C. § 1395ff(b)(3); 42 C.F.R. §§ 405.946(a), 405.966(a)(2).

After steps one and two, the Medicare statute allows HHS to begin recouping overpayments, and if the provider is ultimately successful in the later steps, HHS must pay it back (with interest). 42 U.S.C. § 1395ddd(f)(2)(B). Step three is an ALJ hearing which can include an in-person hearing and the chance to present oral testimony and cross-examination. 42 C.F.R. § 405.1036(c)–(d). If the ALJ does not give a hearing or issue a decision within ninety days of the timely request, the provider can skip step three and go straight to step four: *de novo* review by the HHS Appeals Board. 42 U.S.C. § 1395ff(d)(3)(A). And if the Appeals Board does

No. 20-10443

not issue a decision within 180 days, the provider can seek judicial review in federal court. *Id.* § 1395ff(d)(3)(B).

## II.

In this case, the government determined that Med-Cert was overpaid almost $1.8 million. Med-Cert began the four-step administrative process by filing a Request for Redetermination. In support of that request, Med-Cert filed nearly 13,000 pages of clinical documents and an expert opinion, showing that Med-Cert was not overpaid for the services it provided. The step-one "redetermination" came out the same way as the initial review. Med-Cert then went to step two: "reconsideration" of the redetermination. The reconsideration reaffirmed the redetermination that Med-Cert was overpaid nearly $1.8 million. Med-Cert then appealed that decision and requested an ALJ hearing, but in the meantime, HHS began recouping the funds.

Because of administrative backlog at HHS, Med-Cert still has not received an ALJ hearing. Rather than "escalate" to step four (review before the Appeals Board), Med-Cert sued federal officials to prevent recoupment while it waited for an ALJ determination. To Med-Cert, the ALJ hearing was essential to afford it the due process it was entitled to. The district court agreed, granting a preliminary injunction, then eventually granting summary judgment to Med-Cert, permanently enjoining the federal officials from recouping payments until after Med-Cert has received an ALJ hearing. The federal officials timely appealed.

We review the grant of summary judgment *de novo*, the permanent injunction for abuse of discretion, and the legal issues underlying the grant of the injunction *de novo*. *Family Rehab.*, 16 F.4th at 1204.

No. 20-10443

### III.

Med-Cert's procedural due process claim is foreclosed by *Sahara*. There, we explained that the provider's inability to explain why "steps one and two, standing alone, fail to satisfy the constitutional requirement" was fatal. *Sahara*, 975 F.3d at 531. Though the step-three ALJ hearing gives providers the chance to present live testimony and to cross-examine witnesses, it does not (absent good cause) allow the provider to supplement the evidence that it presented in steps one and two. Just like the provider in *Sahara*, Med-Cert admits it "has no need to provide more evidence." This cuts against Med-Cert's purported need for a live hearing because the hearing will only rehash what has already been produced. *See id.* at 531–32.

Also in-line with the provider in *Sahara*, Med-Cert cannot "explain how the possibility of cross-examination at the hearing would benefit it." *Id.* at 531. Cross-examination is most helpful when material facts are in dispute and the case turns on the credibility or veracity of the government's witnesses. *Id.* That is not the case here. Med-Cert contends that "it could present witnesses at the ALJ hearing that would clearly demonstrate the gross inaccuracies on how the clinical files were ignored in the audits," and that a "live teleconference" "would ensure that [the] incorrect audit contractor decisions would be addressed, discussed, and proven to be inaccurate." But nothing about that approach is unique to a live hearing. In reality, Med-Cert merely wants someone *else* to review its case. But as we said in *Sahara*, that is not enough to establish a right to such a hearing. Med-Cert "has already received two meaningful opportunities to be heard," *id.* at 530, and "it can escalate the review process to the fourth step or to a federal district court" if it so chooses, *Family Rehab.*, 16 F.4th at 1204.

Though Med-Cert claims that a live hearing would give the ALJ the opportunity to "make critical credibility determinations," it fails to explain

how any witness's credibility would make a difference in this case. Rather, as in *Family Rehabilitation*, Med-Cert's claims concern only "documentation issues." *See id.* (holding that a live hearing was not required where overpayment claims "involve[d] documentation issues" and "not objections to the substantive medical judgments of doctors"). Thus, Med-Cert's arguments, like those of the providers in *Sahara* and *Family Rehabilitation*, are unavailing.

Med-Cert is correct to say that *Sahara* does not foreclose every due-process claim challenging HHS's recoupment of overpayments. Each case comes down to its facts. For instance, the provider in *Sahara* did "not even assert that it desire[d] to subpoena any witness." 975 F.3d at 532. Med-Cert says that it plans to provide expert testimony at its ALJ hearing. Even so, the critical point is that the basis of HHS's determination is a lack of supporting documentation as required by law, *not* the doctors' subjective medical judgment on the necessity of services provided. Thus, there is no added benefit of live testimony and cross-examination here, which leads us to the same conclusion as in *Sahara*.

*             *             *

Because the district court did not resolve some of Med-Cert's alternative claims, we REVERSE the district court's grant of summary judgment and the permanent injunction and REMAND for consideration of those claims by the district court in the first instance.